UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

DEBORAH E. GARRETT            )
    Plaintiff,            )
                          )   Civil Action No. 2:07-0076
v.                            )   Judge Nixon/Brown
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
    Defendant.            )

To:   The Honorable John T. Nixon, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) and 1383 (c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits (DIB) and supplemental security income (SSI), as provided under Titles II and XVI of the Social Security Act (Act) as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record. (Docket Entry No. 17). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner to be AFFIRMED.

### I. INTRODUCTION

Plaintiff protectively filed his application for DIB and SSI on July 1, 2004, alleging that she became disabled on April 16, 2004, due to chronic back pain. (Tr. 53). Plaintiff's claim was denied initially and upon reconsideration. (Tr. 39-40,43-44). At Plaintiff's request, an administrative law judge (ALJ) conducted a hearing on June 21, 2006. (Tr. 309-330). Plaintiff, who was represented

1

by counsel, and Dr. J.D. Flynn, a vocational expert ("VE"), testified. (Tr. 401-425). On September 14, 2006, the ALJ issued a written decision, denying Plaintiff's claims for DIB and SSI. (Tr. 18-23). The ALJ made the following findings:

1. The Claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The Claimant has not engaged in substantial gainful activity since April 16, 2004, the alleged onset date.

3. The Claimant has the following severe impairments: congenital spinal stenosis with mild disc bulging at the L4-5 and L5-S1 levels of the spine, reflux disease, and obesity.

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the Claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally or 10 pounds frequently and sit, stand, or walk up to 6 hours each out of an 8 hour day. The Claimant must have the option to alternate between sitting and standing as necessary for comfort. The Claimant cannot perform more than occasional climbing, stooping, bending, crouching, crawling, or kneeling.

6. The Claimant is capable of performing past relevant work as a sewing machine operator. This work does not require the performance of work-related activities precluded by the Claimant's residual functional capacity.

7. The Claimant has not been under a "disability," as defined in the Social Security Act, from April 16, 2004 through the date of this decision.

(Tr. 20-23).

Plaintiff sought review from the Appeals Council and on September 14, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-8), thereby rendering that decision the final decision of the Commissioner. (Tr. 5-8). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are

conclusive. *Id.*

## II. REVIEW OF THE RECORD[1]

Plaintiff was 50 years old at the time of the ALJ's decision (Tr. 59). Plaintiff has an eighth grade education. (Tr. 314). She has past relevant work as a chicken chucker, a band saw operator, a presser machine operator, and a sewing machine operator. (Tr. 53-56).

On December 31, 2001, Dr. Chad Griffen diagnosed Plaintiff with degenerative joint disease of the left wrist as well as carpal tunnel syndrome. (Tr. 153). Plaintiff had, 10 years prior, fractured her left wrist and undergone surgery. (Tr. 153). Dr. Griffen also noticed a decreased range of motion secondary to pain, decreased grip strength, and normal sensation. (Tr. 153). Dr. Grifffen prescribed a wrist immobilizer, Vioxx, and rest. On October 30, 2002, an x-ray of Plaintiff's left wrist showed evidence of a remote fracture with a mild residual deformity. (Tr. 264). On January 10, 2003, Plaintiff underwent surgery to remove a ganglion cyst from her right wrist. (Tr. 263).

Plaintiff began complaining of severe back pain in 2003. (Tr.147). Dr. Bonnie Enrico, a chiropractor, ordered a lumbar MRI in April 2004 which showed mild disc space narrowing at L4-5 and L5-S1; mild diffuse protrusions at L4-5 and L5-S1; and moderate stenosis at L4-5 with slightly milder stenosis at L3-4. (Tr. 297). Plaintiff was then referred to Dr. Leonardo Rodriguez-Cruz. (Tr. 120). Plaintiff reported that her five treatments by Dr. Enrico had not improved her symptoms, that she had not undergone any physical therapy or injections, that she smoke one pack of cigarettes per day, that she had back and leg pain for the past six months which improved with bed rest and was exacerbated by standing, bending, stretching, and walking, and that she had numbness and tingling

---

[1]The Commissioner is reminded that in the future, a more complete chronological statement of facts should be submitted. Simply adopting the facts as stated by the ALJ is insufficient.

3

in her right leg as well as burning and crawling sensations in her back. (Tr. 120). Dr. Rodriguez-Cruz ordered lumbar myelogram, which suggested congenital spinal stenosis at the L4-5. (Tr. 123-124).

Plaintiff was treated by various doctors at the Cumberland Medical Clinic from 1999-2004. Plaintiff first mentioned her back pain to Dr. Ty Webb on June 10, 2004. (Tr. 139). Plaintiff reported that the injections in the lower back helped a little and that she was worried about becoming severely overweight. (Tr. 139). Dr. Webb prescribed Lortab for the pain, Phentermine for weight loss, and told Plaintiff to increase exercise. (Tr. 139). On August 3, 2004, Plaintiff stated that she had good days and bad days regarding her back pain. (Tr. 138). Plaintiff reported that the steroid injections in her back did not help with her pain. (Tr. 138). Plaintiff further reported that she was using the pool at a motel at least twice a week. (Tr. 138). Plaintiff was prescribed Vioxx and was continued on Phentermine. (Tr. 138). On October 13, 2004, Dr. Webb again treated the Plaintiff for lower back pain, prescribing her Celebrex and Lortab to treat her lower back pain and advising her to continue Phentermine for weight loss and to exercise as much as possible. (Tr. 137).

On August 9, 2004, Plaintiff completed an Activities of Daily Living questionnaire, where she reported that she had very bad lower back pain, could not walk very far or for long periods, could lift not more than ten pounds without pain, was gaining weight, could no longer ride horses and had difficulty sleeping because of pain. (Tr. 79-81, 83). Plaintiff also reported that she went outside her home everyday, drove (a stick-shift truck) frequently, tended to her pets, cooked her own meals, performed her own household and outdoor chores with the exception that her son mows the lawn and does any heavy lifting, goes shopping once a week without assistance, watches tv, visits friends and family once or twice a month including picnicking and shopping. (Tr. 81-84, 316).

4

On August 25, 2004, a DDS physician completed a physical residual functional capacity assessment finding that, based upon a review of the record, Plaintiff could occasionally lift or carry 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours in an 8-hour workday, sit with normal breaks for about 6 hours in an 8-hour workday, is unlimited in her ability to push or bull, could frequently climb, balance, stoop, kneel, crouch, and crawl, had no manipulative, visual, communicative, or environmental limitations. (Tr. 128-131). The DDS physician noted that Plaintiff's records did not demonstrate disc extrusion or nerve root impingement and that Plaintiff was not treated with surgery. (Tr. 129-130).

Dr. Michael Cox evaluated the Plaintiff on June 7, 2006, at the request of Plaintiff's attorney. (Tr. 303). At that time, Plaintiff's reported medications were limited to over the counter Tylenol. (Tr. 303). Dr. Cox diagnosed Plaintiff with lumbar spinal stenosis, worse at L4-5 with corresponding facet arthrosis as well as congenital spinal stenosis into the thoracic spine. (Tr. 303). Dr. Cox opined that Plaintiff could occasionally lift five pounds and frequently lift only less than five pounds, could stand or walk less than two hours in an eight hour workday for 30 minutes at a time, could sit for up to four hours in an eight hour work day but would have to alternative sitting and standing every thirty minutes, would be unable to repetitively use her lower extremities, could not push or pull more than ten pounds, could tolerate moderate stress, would have frequent concentration inference because of her pain, would not need to elevate her legs, would most likely have at least four absences per month, would be unable to climb, balance, kneel, crouch or crawl, could reach occasionally, is unlimited as far as handling, fingering, feel, seeing, hearing and speaking, and had no environmental limitations. (Tr. 303-304).

At the hearing on September 14, 2006, Plaintiff testified that she lives alone, drives her stick

shift pick up truck once or twice a week 28 miles round trip, takes care of her dogs, does her own grocery shopping, housework, cooking and laundry, has friends who regularly visit, and could lift 20 or 30 pounds on occasion. (Tr. 319-321). Plaintiff also testified that she could sit for only an hour before her legs went numb, could stand for about 20 minutes before her legs went numb, had difficulty bathing, and had a limited appetite. (Tr. 321-325). Plaintiff further testified that she can use her right hand fairly well but that it does hurt and that she cannot use her left hand much. (Tr. 325). Plaintiff stated that she dropped things constantly, especially if picked up with her left hand. (Tr. 325). Plaintiff also testified that her lower back pain felt like someone dropping hot coals on her lower back and sticking an ice pick in the end of her toes. (Tr. 320, 326). Plaintiff stated that to relieve the back pain, she changed positions, used ice packs and heating pads, and had received steroid injections once. (Tr. 318).

The VE, Dr. Flynn, also testified at the September 14, 2006, hearing. (Tr. 326-330). Dr. Flynn testified that Plaintiff did not have any skills from her previous employment that could be transferred to sedentary work. (Tr. 328). The ALJ then posed the following hypothetical: a person of Plaintiff's age, education and prior relevant work experience who could perform a light work, with no more than occasional climbing, stooping, bending, crouching, crawling or kneeling, and with a sit/stand option as necessary throughout the day for comfort. (Tr. 328-329). The VE then testified that Plaintiff could return to her past relevant work as a sewing machine operator, semi-automatic. (Tr. 329).

The ALJ then posed a more restricted hypothetical, limiting Plaintiff's capabilities to sedentary positions, standing or walking less than two hours, sitting for four hours, no more than occasional pushing and pulling, no climbing, balancing, kneeling, crouching or crawling, no more

6

than occasional reaching, more than four absences per month, and the ability to tolerate moderate work stress. (Tr. 329). Dr. Flynn testified that such a person could not retain employment. (Tr. 329).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

#### B. Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

7

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

to direct a conclusion, but only as a guide to the disability determination. *Id*. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423 (d)(2)(B).

C. <u>Plaintiff's Statement of Errors</u>

Plaintiff alleges two errors in the ALJ's decision: (1) that the ALJ failed to give proper weight to the opinion of Dr. Cox; and (2) that the ALJ improperly discounted Plaintiff's testimony as less than credible regarding the severity and persistence of her pain and symptoms.

With respect to Plaintiff's first argument, that the ALJ failed to give proper weight to the opinion of Dr. Cox, Plaintiff asserts that the ALJ should have given more weight to Dr. Cox's opinion as the only examining physician to complete a medical assessment and there are objective findings which support Dr. Cox's opinion.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). However, in this case, there is no evidence in the record that Dr. Cox ever treated the Plaintiff. In fact, Dr. Cox specifically states that he was examining the Plaintiff at the request of Plaintiffs attorney for her disability case. (Tr. 303). As such, the rationale of the treating

9

physician doctrine simply does not apply here and Dr. Cox's report is not entitled to a special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). After reviewing the record, the Magistrate Judge finds that substantial evidence supports the ALJ's opinion.

The ALJ discounted Dr. Cox's opinion as inconsistent with not only objective medical evidence but also Plaintiff's own reports of daily activities and limitations. (Tr.22). The ALJ noted that, "Dr. Cox's extreme functional limitations are wholly inconsistent with the aforementioned objective CT and MRI scans, the claimant's benign clinical exams, and her conservative treatment...[as well as Dr. Cox's] own clinical findings that the claimant had no signs of neurological or motor deficits or signs of radiculopathy." (Tr. 22). The ALJ further noted that Plaintiff testified at the hearing that she could lift 20 to 30 pounds, and also reported that she cooked meals, did housework and laundry, cared for her pets, drove, shopped, managed her own finances, swam at least twice a week, and visited her grandchildren. (Tr. 22-23).

As noted by the ALJ, Plaintiff has received conservative treatment for her back ailments. Her treating physicians noted that Plaintiff had a fairly intact range of motion of the lumber spine and a full range of motion in the lower extremities. (Tr. 120). The Magistrate Judge would further note that at the time of the Dr. Cox's examination, Plaintiff's only listed medication and treatment course for her back ailments was over-the-counter pain reliever. (Tr. 303). Additionally, Plaintiff's own testimony demonstrates that she is capable of performing a variety of daily activities. (Tr. 79-83,319-326). Further, there is no evidence in the record that Plaintiff has received an follow-up treatment for her wrists and her daily activities do not demonstrate any more than a slight deficiency in this area.

As such, the Magistrate Judge finds that the ALJ's determination that Plaintiff is capable of

10

light work with a sit/stand option and no more than occasional climbing, stooping, bending, crouching, crawling or kneeling is supported by substantial evidence. (Tr. 23).

The Magistrate Judge next considers Plaintiff's second statement of error: the Plaintiff disputes the amount of credibility given to her testimony concerning her pain and impairments and their impact on her ability to work. An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997)(citing 42 U.S.C.A. § 423 and 20 C.F.R. §404.1529(a)). Further, discounting the credibility of a claimant is appropriate to a certain degree where the ALJ finds contradictions from medical reports, claimant's other testimony, and other evidence. *Id*.

In the instant case, the ALJ noted that while the medical evidence revealed that the Plaintiff had been diagnosed with underlying conditions, including congenital spinal stenosis with mild disc bulging at the L4-5 and L5-S1 levels of the spine, reflux disease and obesity; the objective medical evidence did not support the testimony of the claimant as to the intensity, persistence and limiting effects of her pain and other symptoms. (Tr.20,22). The Magistrate Judge finds that substantial evidence supports the ALJ's findings on this issue.

Again, the Plaintiff's reported daily activities as well as her conservative treatment in addition to the fact that she was taking only over-the-counter pain medication conflict with Plaintiff's subjective complaints of pain. Allegations of pain do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity. *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1227 (6th Cir. 1988). That is clearly not the case here. The ALJ evaluated Plaintiff's testimony regarding the severity of her pain

and limitations in accordance with the regulations and reasonably determined that Plaintiff's testimony was not entirely credible. The ALJ did take into account Plaintiff's subjective complaints, limiting her to light work with a sit/stand option and limited postural activities. As such, the ALJ properly afforded the correct weight to the credibility of Plaintiff's testimony regarding her complaints as to the severity and persistence of her pain and symptoms.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc).

ENTERED this 10TH Day of December, 2008.

_____
JOE B. BROWN
United States Magistrate Judge